J-S26001-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF: H.R.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.N.J., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 203 MDA 2024 |

Appeal from the Decree Dated January 8, 2024
In the Court of Common Pleas of Dauphin County
Orphans' Court at No(s):  74 AD 2023

BEFORE:  PANELLA, P.J.E., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY PANELLA, P.J.E.:          **FILED: SEPTEMBER 5, 2024**

J.N.J. ("Mother") appeals from the January 8, 2024, decree entered in the Court of Common Pleas of Dauphin County involuntarily terminating her parental rights to H.R.W. ("Child"), born August 2022. After careful review, we affirm.

We glean the following factual and procedural background from our review of the certified record. On October 27, 2023, the Dauphin County Social Services for Children and Youth ("the Agency") filed a petition to involuntarily terminate Mother's parental rights to Child. The court held a hearing on December 11, 2023 that went to a second day and was completed on January 8, 2024. The Agency presented the testimony of Jordan DiVito, Philadelphia NET Community Care Caseworker; Heather Gutshall, the manager of social services at the Agency; and Ashley Rivera, Dauphin County NET foster care caseworker. Mother was represented by counsel. Mother testified on her own

behalf and presented the testimony of her mother, S.S. The following testimony and evidence were adduced at the hearing.

This case began in the Philadelphia Department of Human Services, Children and Youth Division ("Philadelphia CYS"), which received a General Protective Services referral alleging Child was born with fentanyl in his system. *See* N.T., 12/11/23, at 5. Mother's subsequent drug screen was positive for fentanyl and marijuana and her prenatal appointment records indicate she used illegal substances throughout her pregnancy. Mother already had an open case with Philadelphia CYS at this time due to truancy concerns related to Mother's other children.

Child was adjudicated dependent on October 5, 2022, and Philadelphia CYS established Mother's service objectives as: (1) participate in drug and alcohol treatment; (2) sign all releases and consents; (3) attend supervised visits with Child; (4) comply with parenting services; (5) comply with behavioral services; and (6) comply with housing services. Mother moved to Dauphin County in April 2023, but the case and Child remained with Philadelphia CYS until September 11, 2023.

While with Philadelphia CYS, Mother did not complete drug and alcohol treatment or attend any scheduled drug screens between March and June 2023, resulting in them being presumed positive. *See id.* at 7-8. Mother tested negative on June 27, and August 3, 2023, but tested positive for Oxycodone on September 1, 2023. *Id.* at 7.

Although Philadelphia CYS offered Mother one supervised visit with Child per week, Mother only attended eleven visits with Child between September 2022 and August 2023, without explanation. *See id.* at 20. Specifically, Mother attended nine of the twenty visits offered between September 2022 and January 2023. *See id.* at 8, 10. Mother attended one visit with Child in April 2023. Her last visit with Child before the December 11, 2023 TPR hearing was on Child's birthday in August 2023 and only lasted nine minutes. *See id.* at 20.

Mother was required to complete parenting classes that included a "family school" component, which is a program to assist parents with bonding, usually with infants and young children. *Id.* at 11. Mother was discharged from family school for noncompliance. Despite Philadelphia CYS referring Mother to parenting classes several times, Mother did not successfully complete any session. *See id.* at 11-12.

Over the life of the case, Mother provided Philadelphia CYS with only one work schedule, in August 2023, to comply with her employment objective. *See id.* at 13. Mother was evicted from the home she was living in with her mother and did not comply with Philadelphia CYS's referral to Blueprint Housing. *See id.* Due to Mother's failure to comply with her objectives, her continued use of illegal substances, and her housing instability, Philadelphia CYS recommended Mother's parental rights be terminated. *See id.* at 14.

On September 12, 2023, the Agency received a request for transfer of jurisdiction of this matter from Philadelphia CYS. *See id.* at 23. Mother's Philadelphia CYS objectives transferred to the Agency. *See id.* at 24.

Gutshall oversees all cases accepted by the Agency for services. *See id.* at 22. Gutshall first contacted Mother by phone and text before meeting her in person on October 13, 2023. At that time, Gutshall had a "frank conversation" with Mother about the Agency's expectations of her. *Id.* at 23. Before their October 13, 2023 meeting, Mother's drug screen on September 13, 2023, had tested positive for Oxycodone. *See id.* at 24. Her September 21, 2023 unannounced drug screen tested positive for Oxycodone and fentanyl. As we see all too often, very sadly, with individuals suffering from drug addiction, the Agency's main concern about Mother is her failure to maintain sobriety. *See id.* at 29.

The Agency told Mother she was no longer permitted to remain in the home with her children due to the positive drug tests and, on October 19, 2023, the Agency transferred custody of Mother's other two children because of the Agency's ongoing concerns about Mother's drug use. *See id.* at 23-24.

At the October 19, 2023 review hearing, Mother refused to provide a drug screen and stated she was not going to comply with the Agency. *See id.* at 25, 29. Since then, Mother has not complied or cooperated with any objective, and has essentially disappeared. *See id.* at 24-26. Although the Agency had discussed visitation with Mother, and Gutshall advised Mother it was her right to have visitation, Mother failed to make any further contact

after October 19th, so Gutshall was not aware of Mother having any visits with Child between her 9-minute visit in August and the December TPR hearing. *See id.* at 25.

On October 27, 2023, the Agency filed a petition for the termination of parental rights ("TPR") due to Mother's lack of cooperation with her objectives. *See id.* at 27. As of the time of the December 11, 2023 TPR hearing, Mother had not provided the Agency with proof of housing nor enrolled in a drug and alcohol program. *See id.* at 27-28. Mother did provide consents for the release of Child's medical and dental records. *See id.* at 30.

Ashley Rivera visited Child's foster home monthly and provided foster parent support as part of her responsibilities as a resource support worker with NET Foster Care. *See id.* at 31. Child's foster home is an adoptive resource. Rivera has observed a healthy relationship between Child and the foster parents. Foster parents provide for Child's needs and enjoy outings with Child and the other children in the home, with whom Child gets along well. *See id.* at 32. Child calls foster mother, "Mama," and seeks comfort from her when upset. *See id.*

Since she began working on the case in September 2023, Rivera has not observed any interaction between Child and Mother and therefore she does not believe a bond exists between them such that it would have a negative impact if broken. Conversely, based on her observation of the positive interaction between Child and the foster parent, Rivera believes severing their relationship would have a negative impact on Child. *See id.* at 33.

Gutshall testified the Agency believes termination of Mother's parental rights to Child and a goal change to adoption would be appropriate because Mother has not cooperated with the service objectives. **See id.** at 27. Specifically, Mother has not provided proof of housing or income and was not participating in drug and alcohol treatment. **See id.** at 27-28.

Until the December 11, 2023 TPR hearing, when Mother stated she attended a virtual psychological evaluation, the Agency was unaware of whether Mother had completed the evaluation. The court continued the matter for Mother to provide the parties with a copy of the evaluation. **See id.** at 44-45. The document provided from Pioneer Counseling and Consulting was a "therapist initial visit note" that contained Mother's self-reported history, but not information about whether a comprehensive psychological evaluation had taken place. **See** N.T., 1/8/24, at 4-5, 7-8; Agency Exhibit 24. However, because Mother did contact Pioneer to comply with her objective of obtaining a psychological evaluation, the Agency did not deem Mother uncooperative with this objective. **See id.** at 6-8, 9; Exhibit 11.

Mother testified about her compliance with drug screening. Contrary to Gutshall's testimony, Mother claimed she did everything the Agency asked of her, including appearing at every drug screening. **See id.** at 37. She asserted the Agency did not offer any visitation and the only reason she missed visits in the past was because Child did not appear. **See id.** at 40. Mother testified she has paystubs from her employment with Foot Locker and she has shown

them to the Agency caseworker. *See id.* at 43. The orphans' court did not find Mother's testimony credible.

At the conclusion of the hearing, the court entered the decree involuntarily terminating Mother's parental rights to Child pursuant to 23 Pa.C.S.A. §§ 2511(a)(2), 2511(a)(5), 2511(a)(8), and 2511(b). Mother filed a timely notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The orphans' court filed a responsive Rule 1925(a) opinion.

Mother alleges the orphans' court erred or abused its discretion in terminating her parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (a)(5), and (a)(8).

Our standard of review of this matter is well-established:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (citations and quotation marks omitted).

The involuntary termination of parental rights is governed by Section 2511 of the Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. *Id.* at 830; *see also* 23 Pa.C.S.A. § 2511(a)(1)-(11). This Court need only agree with the orphans' court's determination as to any one subsection of Section 2511(a), in addition to Section 2511(b), in order to affirm the orphans' court's termination holding. *See M.E.*, 283 A.3d at 830.

We initially analyze this case under Section 2511(a)(2), which provides, as follows:

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

....

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity,

- 8 -

abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2), (b).

In order to satisfy Section 2511(a)(2), the petitioning party must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021) (citation omitted). Grounds for termination pursuant to Section 2511(a)(2), however, "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id*. (citation omitted).

Mother argues she testified she complied with all Agency objectives, and therefore the Agency failed to meet its clear and convincing evidence burden. We disagree because Mother fails to acknowledge the orphans' court found Mother's testimony incredible, and the credible testimony was Mother utterly failed to meet the majority of her objectives. *See* Orphans' Court Opinion, 4/2/24, at 10.

The orphans' court found grounds for termination were met under Section 2511(a) because, "for an unreasonable period of time, since [Child's] birth [in] August [] 2022, Mother left [Child] without essential parental care or control." *Id.* at 9. While the court noted the "record includes evidence of instances of nominal progress[,]" the court also observed it is guided by the long-standing principle that "parental rights are not preserved by waiting for

a more suitable time to preform one's parental responsibilities while others provide the child with his or her physical and emotional needs." *Id.* (citation omitted). It is Child's foster parents, not Mother, who have provided all Child's needs for over 15 months, and the court explained, it "will not disrupt the permanence and stability [Child] enjoys based upon the hope that Mother can acquire and maintain the necessary commitment to parent properly." *Id.* at 10. The record supports the court's decision.

In August 2022, Child was put in placement because he was born with Fentanyl in his system. *See* N.T., 12/11/23, at 5. Mother took illegal drugs throughout her pregnancy with Child and, between March and June 2023, Mother tested positive for illegal drugs three times and failed to attend multiple drug screenings, resulting in them being deemed positive. *See id.* at 7-8. Mother tested negative on June 27, and August 3, 2023, but tested positive for Oxycodone on September 1 and 13, 2023. *Id.* at 7, 24. She tested positive for Oxycodone and fentanyl on September 21, 2023. Mother refused to provide a drug screen at the October 19, 2023 hearing and announced she was not going to comply with any Agency requests. *See id.* at 25, 29. Since then, Mother has essentially disappeared and has not cooperated with any objective. *See id.* at 24-26.

As of the December 11, 2023 hearing, Mother had not provided the Agency with proof of housing nor enrolled in a drug and alcohol program. *See id.* at 27. She has missed the majority of her weekly visits with Child, attending only eleven of them between September 2022 and August 2023,

without any explanation. ***See id.*** at 20. While Mother claimed she lacked transportation, she never contacted the Agency explaining this or requesting their assistance. Mother's last visit with Child was for nine minutes on his birthday in August 2023. ***See id.*** The family training school, designed to assist with bonding between Mother and Child, discharged Mother twice for her noncompliance. Despite being referred to parenting classes several times, Mother failed to successfully complete a session. ***See*** at 11-12.

Mother provided Philadelphia CYS with a work schedule once over the course of the case to comply with her employment objective and never provided documentation to the Agency. ***See id.*** at 13. Mother was evicted from the home she was living in with her mother, did not comply with the referral to Blueprint Housing, and provided no proof of stable housing. ***See id.***

Overall, this testimony establishes Mother's repeated and continued parental incapacities have caused Child to be without essential parental care and control and Mother either cannot or will not remedy her incapacities. ***See*** 23 Pa.C.S.A. § 2511(a)(2).

Once the orphans' court determines the petitioner has established grounds for termination under Section 2511(a) by "clear and convincing evidence," the court then assesses the petition pursuant to Section 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. ***See In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). Therefore, we now turn to an assessment of Section 2511(b).

Section 2511(b) provides:

> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

Preliminarily, Mother, has failed to preserve any challenge related to Section 2511(b) for her failure to raise the claim in the Statement of Questions Involved portion of her brief or provide any discussion pertaining to Section 2511(b) in the Argument section of her brief. Therefore, any challenge to the court's finding as to Section 2511(b) is waived. **See In re M.Z.T.M.W.**, 163 A.3d 462, 465-66 (Pa. Super. 2017) (explaining this Court will not review an appellant's claim unless it is included in the statement of questions involved, developed in her argument, and supported by citation to relevant legal authority).

However, even if Mother had preserved a challenge to Section 2511(b), we would conclude it is without merit.

When determining "the best interests and the needs and welfare of the particular child[] involved," the orphans' court must consider a child's specific needs. **Interest of K.T.**, 296 A.3d 1085, 1106 (Pa. 2023) (citation omitted).

This includes "intangibles such as love, comfort, security, and stability," if the child resides in a pre-adoptive home, and if the child is bonded with the foster parent. *Id.* (citation omitted). Although generally the court must consider the nature of the parent-child bond and the effect of severing it, "in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (citation omitted).

The orphans' court explains:

> Mother presented no evidence upon which we may find that a bond exists that, if broken, will cause detriment to [Child].
>
> [Child] has resided with a foster family since shortly after birth. The foster family ensures that [Child]'s needs for love, safety and stability are met. It is the only home he has ever known. [Child] has bonded with the foster parents and his best interests are served in that home.
>
> We will not disrupt the permanency [Child] enjoys based upon the hope that Mother can acquire and maintain the necessary commitment to parent properly.

Orphans' Court Opinion, 4/2/24, at 10. The record supports the court's position.

Rivera testified she has observed Child with his foster family on a monthly basis since her assignment to the case in September 2023, and Child and his foster parents have a healthy relationship. *See* N.T., 12/11/23, at 23. Child calls foster mother, "mama," seeks comfort from her when upset, and gets along well with the other children in the home. *See id.* at 32. The foster parents are an adoptive resource. *See id.* Because Mother has not attended

any visits since the 9-minute visit on Child's birthday in August, Rivera had not observed any interaction between Child and Mother at the time of the December 2023 TPR hearing. Rivera does not believe a bond exists between them such that severing it would cause a negative impact. Conversely, based on her observation of the positive interaction between Child and the foster parents, Rivera believes severing that relationship would negatively impact Child. *See id.* at 33.

Therefore, regardless of waiver, we would discern no error of law or abuse of discretion in the court's finding that termination of Mother's parental rights would best serve Child's needs and welfare pursuant to Section 2511(b). Based on our review of the record, we find no abuse of discretion and conclude the trial court appropriately terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b).

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/5/2024